# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. 5:25-cv-02701-DOC-AGR                              Date:  October 16, 2025

Title: FRANCISCO COC TUT, et al., v. KRISTI NOEM, Secretary, Department of Homeland Security, et al.,

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):** **TEMPORARY RESTRAINING ORDER AS TO RELEASE OR PROVISION OF BOND HEARING [DKT. 4]**

On October 14, 2025, Petitioners Francisco Coc Tut, Lefner Gutierrez Funes, Juan Marcial Cruz, Xiomara Sanchez Martinez, Adolfo Torres Aguirre, Aaron Mico Vargas, and Mario Romero Serrano filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition"), challenging the lawfulness of their classification for detention by U.S. Immigration and Customs Enforcement ("ICE") and seeking to be released from custody, unless they are provided with a bond hearing pursuant to 8 U.S.C. § 1226(a). Petition (Dkt. 1). On the same date, Petitioners filed an ex parte application for a temporary restraining order ("Application"), requesting the same relief as in the Petition. Application ("App.") (Dkt. 4). Respondents Kristi Noem, Pamela Bondi, Todd Lyons, Erenesto Santacruz, Jr., and Fereti Semaia oppose the Petition and Application. Opposition to Application ("Opp'n") (Dkt. 6). For the reasons stated below, the Application is **GRANTED**.

## I.     Background

### A.     Facts

Petitioners allege the following:

Petitioners are foreign nationals currently in federal custody at the ICE Adelanto Detention Center in Adelanto, California. App. at 4-8. Between May 15 and August 19, 2025, ICE arrested and charged each petitioner with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone present without admission in the United States. *Id.*

After being detained, Petitioner Coc Tut was denied a bond redetermination hearing because he was an applicant for admission. *Id.* at 4. Petitioner Gutierrez Funes was denied a bond hearing by an immigration judge citing that the court lacked jurisdiction to conduct a bond redetermination hearing. *Id.* at 5. Petitioner Marcial Cruz requested a bond hearing, but withdrew the request on September 10, 2025; he is unable to obtain a bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and in light of *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). *Id.* Petitioner Sanchez Martinez was denied a bond hearing because an immigration judge decided that the court lacked jurisdiction to conduct a bond hearing. *Id.* at 6. Petitioner Torres Aguirre was denied a bond hearing by an immigration judge, citing that the court lacked jurisdiction to conduct a bond hearing because he was an applicant for admission. *Id.* at 7. Petitioner Mico Vargas was denied a bond hearing by an immigration judge, citing that the court lacked jurisdiction to conduct a bond hearing because he was present without admission. *Id.* at 7. Petitioner Romero Serrano was denied a bond hearing by an immigration judge, citing that the court lacked jurisdiction to conduct a bond hearing pursuant to *Matter of Yajure Hurtado*. *Id.* at 8.

Petitioners Coc Tut, Gutierrez Funes, Sanchez Martinez, Torres Aguirre, Mico Vargas, and Romero Serrano resided in California prior to their detention. *Id.* at 4-8. Petitioner Marcial Cruz resided in North Carolina prior to his detention. *Id.* Petitioners do not have any criminal record or previous contact with immigrant authorities that would mandate detention under 8 U.S.C. § 1226(c). *Id.*

Each petitioner was provided with a U.S. Department of Homeland Security ("DHS") Form I-862 Notice to Appear, in which Petitioners are identified as "an alien present in the United States who has not been admitted or paroled." *Id.*, Exs. A-G.

### B.     Procedural History

Plaintiff filed its Complaint (Dkt. 1) on July 16, 2025. Opelika was served with the Complaint and Summons on July 31, 2025 (Dkt. 10). Aikens was served with the Complaint and Summons on July 31, 2025 (Dkt. 11). Opelika and Aikens failed to file an answer or otherwise respond, and the Clerk entered default against Opelika and Aikens on August 26, 2025 (Dkt. 13). Plaintiff filed this Motion (Dkt. 15) on September 8, 2025.

## II.  Legal Standard

To justify ex parte relief, the moving party must make two showings: (1) "the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) "it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

For the Court to grant an application for a TRO, the moving party must show: (1) they are "likely to succeed on the merits" of the underlying claim; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tips in his favor;" and (4) that the requested injunction "is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. See *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

## III.  Discussion

### A.  This Court has jurisdiction over the matter.

Respondents argue 8 U.S.C. § 1252(b)(9) and (g) prevent this Court from reviewing Petitioners' claims.  Opp. at 4-6.  The Court addresses each argument in turn and finds them without merit. First, Respondents argue that under § 1252(b)(9) judicial review is only proper before a federal court of appeals in the form of a petition for review of final removal order.  Opp. at 6.  Respondent also cite to *Jennings v. Rodriguez*, 583 U.S. 281 (2018), to underscore that Petitioners' claims fall under the scope of § 1252(b)(9). However, §1252(b)(9) does not apply here because no Petitioner has a final removal order.

 As in *Jennings*, the Court finds Petitioners' claims are not encompassed in § 1252(b)(9) because they "are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined."  583 U.S. at 294–95.  Therefore, "[u]nder these circumstances, § 1252(b)(9) does not present a jurisdictional bar."  Id. at 294–95.

Second, Respondents argue that § 1252(g) bars this Court from reviewing Petitioners' claims because barring other laws that provide jurisdiction, § 1252(g) strips all courts of jurisdiction to hear "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  § 1252(g).  However, Petitioners' claims challenge whether they are subject to mandatory detention during the pendency of removal proceedings and argue that their due process

rights are being violated. See App. Here, Petitioners are not challenging the decision to commence proceedings, adjudicate cases, or execute removal orders.

The Supreme Court previously characterized § 1252(g) as a narrow provision, applying "only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original). In doing so, the Supreme Court found it "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.* (emphasis added); see also *Jennings*, 583 U.S. at 294 ("We did not interpret [section 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves.") (citing *Reno*, 525 U.S. at 482).

Since Petitioners' claims bond denial claims do not challenge any decision to commence proceedings, adjudicate cases, or execute removal orders, the Court finds that § 1252(g) does not present a jurisdictional bar to judicial review. Therefore, the Court has jurisdiction over this matter.

**B. Petitioners have established a likelihood of success on the merits.**

The first Winter factor, "the most important factor" in assessing whether injunctive relief should be granted. *Env't Prot. Info. Ctr. v. Carlson,* 968 F.3d 985, 989 (9th Cir. 2020). Here, the Court finds Petitioners have established a likelihood of success on the merits.

First, the Court must first determine whether Petitioners' detention is governed by § 1225(b)(2)(A) and therefore subject to mandatory detention, or if Petitioners fall under § 1226(a) and are subject to detention on a discretionary basis. Petitioners argue their detention is governed by § 1226(a), and they are unlawfully subject to mandatory detention, without a bond hearing under § 1225(b)(2). App. at 10–18. Respondents disagree and contend Petitioners are "applicants for admission" under§ 1225(a), and as such subject to mandatory detention. Opp. at 10.

Section 1225 provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." § 1225(b)(2)(A). Except for a limited exception not applicable here, detention under § 1225 is mandatory. *Jennings*, 583 U.S. at 297. Additionally, under § 1255,

individuals are not entitled to a bond hearing. *Id.* ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

As the Supreme Court explained, while "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under § 1225(b)(1) and (b)(2)," "[i]t also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under § 1226(a) and (c)." *Id.* at 288–89 (emphasis added); see also *id*. at 288 (explaining that, "once inside the United States . . . an alien present in the country may still be removed" under "Section 1226") (emphasis added). Section 1226(a) provides that, pursuant to a warrant issued by the Attorney General, a noncitizen who is "arrested and detained pending a decision on whether the alien is to be removed from the United States" may be detained or released on bond. Accordingly, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 1236.1(d)(1)); see also *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022) ("Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including . . . an initial bond hearing before a neutral decisionmaker.").

Respondents also urge the Court to follow the BIA ruling in *Matter of Yajure Hurtado*. Opp. at 23. The BIA concluded that a noncitizen in the United States, who was not admitted, continues "seeking admission" under § 1225 because the individual "provides no legal authority for the proposition that after some undefined period of time residing in the interior of the United States without lawful status, the INA provides that an applicant for admission is no longer 'seeking admission.'" *Yajure Hurtado*, 29 I&N Dec. at 221.

Like many our sister courts in the District and across the country,[1] the Court disagrees with Respondents' and the BIA's novel interpretation of § 1225. Based upon the statutory context, scheme, and text of § 1225, the Court finds it difficult to find that an individual is "seeking admission" or an "applicant for admission" when the noncitizen never attempted to do so.

Additionally, the BIA's reading of § 1225(b) renders superfluous the Laken Riley Act, amendments to § 1226(c), which added in part, subsection 1226(c)(1)(E). *Yajure Hurtado*, 29 I&N Dec. at 222. The amendments applied mandatory detention to noncitizens who are (1) inadmissible because they are present without admission or

---

[1] See *Santiago Flores v. Noem*, Case No. 5:25-cv-2490-AB-AJR (C.D. Cal. Sept. 29, 2025); *Zaragoza Mosqueda v. Noem*, No. 5:25-CV-02304-CAS-BFM, 025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *5–9 (S.D.N.Y. Aug. 13, 2025); *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *4–9 (D. Mass. July 24, 2025); *Barrera v. Tindall*, No. 3:25-CV-541-RGJ, 2025 WL 2690565, at *5 (W.D. Ky. Sept. 19, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *7–9 (E.D. Mich. Sept. 9, 2025); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1261 (W.D. Wash. 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099, at *8 (D. Ariz. Aug. 11, 2025), report and recommendation adopted sub nom. *Rocha Rosado v. Figueroa*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Kostak v. Trump*, No. CV 3:25-1093, 2025 WL 2472136, at *3 (W.D. La. Aug. 27, 2025).

parole, procured admission into the United States because of misrepresentation, or lacked proper documentation; and (2) have been charged with, convicted of, or arrested for certain enumerated crimes. Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025) (emphasis added). As noted by other courts, "'If § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless' and this Court, too, 'will not find that Congress passed the Laken Riley Act to perform the same work that was already covered by § 1225(b)(2).'" *Lopez-Campos v. Raycraft*, 2025 WL 2496379 at *8 (E.D. Mich. Aug. 29, 2025) (quoting *Maldonado v. Olsen*, 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025)). If "Congress had intended for Section 1225 to govern all noncitizens present in the country, who had not been admitted, then it would not have recently adopted an amendment to Section 1226 that prescribes a subset of noncitizens be exempt from the discretionary bond framework." Id. For these reasons, the Court declines to adopt the reasoning in *Matter of Yajure Hurtado*.

As acknowledged in *Jennings*, § 1226 applies to "certain aliens already in the country," as opposed to § 1225(b), which "applies primarily to aliens seeking entry into the United States[.]" 583 U.S. at 281, 297. Here, each Petitioners was residing in the United States at the time of their arrest. Based on the record before the Court and the plain text of the statute, Petitioners are not "seeking admission" or are "applicant[s] for admission" under § 1225. Thus, the Court concludes § 1225(b) does not apply to people like Petitioners who are "already in this country," *Jennings*, 583 U.S. at 289, and thus Petitioners may only be subject to detention as a matter of discretion under § 1226(a).

### C. Petitioners' Procedural Due Process rights were violated.

Since Petitioners' detention is discretionary and not mandatory, the Court next addresses whether detention without a bond hearing violates Petitioners' due process rights.

The Fifth Amendment's Due Process Clause prevents the Government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Supreme Court has firmly established that "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693; see also *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (citation omitted)).

The Ninth Circuit has applied the test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to due process challenges to removal proceedings. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022); see also *Cruz Pleitez v. Barr*, 938 F.3d

1141, 1145–46 (9th Cir. 2019); *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160–61 (9th Cir. 2004); *Martinez-de Bojorquez v. Ashcroft*, 365 F.3d 800, 805 (9th Cir. 2004). Whether administrative procedures are sufficient under the Fifth Amendment requires consideration of: "(1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Mathews*, 424 U.S. at 335. Applying the *Mathews v. Eldridge* balancing test, the Court concludes that Petitioners' detention without a bond hearing violates due process.

Petitioners have a significant private interest in not being detained without due process of law. A person's liberty cannot be abridged without "adequate procedural protections." *Zadvydas*, 533 U.S. at 690. Petitioners are requesting that DHS adhere to existing procedures and hold individualized bond hearings, as they are entitled to under § 1226(a). At a minimum, § 1226(a) requires a valid exercise of DHS's discretion in making a detention determination. See 8 C.F.R. § 236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."). Here, the record contains no indication that DHS exercised any discretion in detaining the Petitioners. Indeed, under § 1226(a), DHS has wide latitude in exercising its discretion regarding detention, which is not subject to second-guessing by this Court. The problem is that Respondents have not offered any explanation for Petitioners' detention other than that it is mandatory, not discretionary. Accordingly, Petitioners have no recourse to appeal DHS's detention decision to an immigration judge, who then conducts their own assessment of Petitioners' flight risk and dangerousness, among other factors. See 8 C.F.R. § 1003.19(d) ("The determination of the Immigration Judge . . . may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or the Service."). Accordingly, Petitioners have established that they have a private interest in their liberty in advocating for a bond hearing pursuant to § 1226(a), of which they have been completely deprived.

With respect to the second factor, the Court concludes the risk of erroneous deprivation is high. "Civil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654, at *10 (N.D. Cal. Sept. 26, 2025) (citing *Zadvydas*, 533 U.S. at 690). Petitioners have not received a bond hearing. So there has been no opportunity to determine whether there is a valid basis for Petitioners' detention. See *Pinchi v. Noem*,

No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *5 (N.D. Cal. July 24, 2025). Therefore, the risk of erroneous deprivation of liberty is high.

Detention under § 1226(a) advances legitimate government purposes such as "ensuring the appearance of aliens at future immigration proceedings" and preventing danger to the community." *Zadvydas*, 533 U.S. at 690. However, the government has not argued that Petitioners are a flight risk or danger to the community. Further, "[i]n immigration court, custody hearings are routine and impose a 'minimal' cost." *Singh v. Andrews*, No. 25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025) (quoting *Doe v. Becerra*, 25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). So, the burden of affording Petitioners a bond hearing does not outweigh Petitioners' substantial liberty interest and the risk of erroneous deprivation.

Therefore, the Court finds that Petitioners have a liberty interest and determined that due process requires Petitioners to receive a hearing regarding whether detention is warranted. Petitioners have established a likelihood of success on the merits.

**D. Without injunctive relief, Petitioners will likely suffer irreparable harm.**

Petitioners have demonstrated a likelihood of irreparable harm absent injunctive relief. Respondents assert that Petitioners are subject to mandatory detention under § 1225(b)(2), a provision that does not apply to Petitioners, nor provides a review of their detention. Respondents' application of § 1225 to Petitioners raises constitutional concerns "that irreparable harm is likely, not just possible" in the absence of . . . injunctive relief." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). Accordingly, the Court finds Petitioners have clearly shown risk of irreparable harm. See *Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th Cir. 2017) (finding irreparable harm was likely to result from government's policy of not considering financial ability to pay immigration bonds); see also *Rodriguez*, 715 F.3d at 1144–45 (finding irreparable harm was likely to result from government's reading of immigration detention statutes as not requiring a bond hearing for noncitizens subject to prolonged detention).

**E. The balance of hardships and public interest is in Petitioners' favor.**

The last two Winter factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Respondents argue they have a "compelling interest in the steady enforcement of its immigration laws." Opp. 13. Nonetheless, the Court finds that the balance of equities and public interest factors favors Petitioners. Given that injunctive relief is only the bare minimum required under § 1226, the Court finds the harm to Respondents is minimal. See *Rodriguez*, 715 F.3d at 1145 (finding the government "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns"). Furthermore, "it is always in the public interest to prevent the violation of a party's constitutional rights, . . .

because all citizens have a stake in upholding the Constitution." *Doe v. Horne*, 115 F.4th 1083, 1098–99 (9th Cir. 2024) (citation modified).   For these reasons, the Court concludes that the balance of hardships and public interest tips sharply in favor of Petitioners.

## IV. Disposition

Based on Petitioners' showing of likelihood of success on the merits and irreparable harm, the minimal harm to Respondents, and the public's interest in upholding the Constitution, the Court **GRANTS** Petitioners' Application.

Respondents are **ENJOINED** from:

1. detaining Petitioners unless they are provided an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven days of the date of this Order; and
2. transferring, relocating, or removing Petitioners from the Central District of California without further order of the Court and pending final resolution of this litigation.

The Court **ORDERS** Respondents **TO SHOW CAUSE** as to why a preliminary injunction should not issue.  Respondents shall file any response by **October 21, 2025**, and Petitioners shall file a response no later than **October 24, 2025**.

The Court SETS a hearing in person on whether a preliminary injunction should issue on **October 28, 2025**, at 9:00 a.m. All parties are required to attend the hearing in person, and U.S. Immigration and Customs Enforcement is **DIRECTED** to transport Petitioners to the courtroom and ensure their presence at the hearing.

MINUTES FORM 11                                                                                    Initials of Deputy Clerk: kdu

CIVIL-GEN